UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GEANENE MILLER,

        Plaintiff,                        CIVIL ACTION NO. 04 CV 74261 DT

       v.                                DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,            MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security Disability case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II. Background

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on January 2, 2002, claiming that she was disabled due to depression, insomnia, stress, bi-lateral carpal tunnel syndrome, and neck and back impairments, with an onset date of March 29, 2000. (Tr. 18, 45-47, 57) Plaintiff was 47 years of age when she filed the application and had worked as a deli clerk in a grocery store from 1983 to her alleged onset date. (Tr. 58) The Social

Security Administration (SSA) denied the claim on April 23, 2002. (Tr. 30-34) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 35-36) The hearing was held on August 16, 2003 before ALJ Regina F. Sobrino. (Tr. 243-77) On August 27, 2003, the ALJ issued a decision denying plaintiff's claim. (Tr. 15-24) The ALJ determined that plaintiff had bi-lateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, a depressive disorder, and an anxiety-related disorder, and that her impairments were "severe" within the meaning of 20 C.F.R. § 404.1520, but that she did not have an impairment that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations. (Tr. 23) The ALJ further concluded that plaintiff, notwithstanding her impairments, was capable of performing a limited range of light-exertion jobs and that there were a significant number of such jobs in the regional and national economy. (Tr. 23-24) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 24)

Following the ALJ's denial of his application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 11-14) The Appeals Council denied the request on October 6, 2004. (Tr. 5-7) The ALJ's decision thus became the final decision of the Commissioner. On November 3, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff contends in her motion that the ALJ posed an inaccurate hypothetical question to the vocational expert (VE) who testified at the hearing and, therefore, that the ALJ's reliance on the VE's testimony was improper. The Commissioner contends in her motion that the decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.   As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment.  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the

performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

As stated above, at step five of the disability determination process, the ALJ must consider, among other things, the claimant's residual functional capacity (RFC). In the matter before the court, the ALJ rendered the following RFC determination:

> The claimant has the residual functional capacity to lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally. She can stand/walk 6 hours per 8-hour work day and sit 6 hours per 8 hour work-day. She should have the opportunity to change position for a few minutes every 30 minutes. She cannot climb ladders, ramps, or scaffolds, or crawl. She can occasionally stoop, kneel, and crouch. She should not perform work that involves more than occasional flexion, extension or rotation of the neck. She should not be exposed to vibration or use power tools. She can perform frequent, but not constant, fingering and handling. She should not engage in forceful gripping, grasping, pinching, squeezing, or twisting. She should not reach overhead with her right (dominant) arm. She is limited to performing simple, routine work that does not involved more than superficial contact with co-workers or supervisors, and that does not involve dealing with the general public.

(Tr. 23) At the hearing, the ALJ posed a hypothetical question to the VE regarding plaintiff's ability to engage in substantial gainful activity. The ALJ incorporated the above-quoted RFC determination in the hypothetical. (Tr. 270-71) In response thereto, the VE testified that a person with such limitations was capable of working as a bench assembler, a machine operator, an inspector, a repairer, or a packer. (Tr. 271) The VE characterized these positions as "light" jobs.[1] Id. Further, the VE testified that there were approximately 13,000 such jobs in the lower

---

[1] "Light work" is defined in 20 C.F.R. §§ 404.1567(a) as follows:
    Light work involves lifting no more than 20 pounds at a time with frequent lifting of or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

peninsula of the State of Michigan.[2]  (Tr. 271-73)  Based on the testimony of the VE, the ALJ concluded that there were a significant number of jobs in the regional economy that plaintiff could perform and, therefore, that she was not disabled.  (Tr. 23-24)

      Substantial evidence to support to support a finding that a claimant is not disabled "may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'"  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987)(citations omitted).  Plaintiff contends that the hypothetical posed by the ALJ did not accurately portray her functional limitations and, therefore, that the ALJ could not properly rely on the VE's testimony in determining that plaintiff was not disabled.

      Plaintiff's first claim of error in this regard is that the ALJ did not give proper consideration to the findings of plaintiff's treating physician, Dr. K. Fram, with respect to plaintiff's impaired ability to use her hands due to carpal tunnel syndrome.  Dr. Fram stated in progress notes dated April 8, 2002 and May 2, 2002 that plaintiff "was advised to avoid repetitive use of her hands, pushing and pulling and to avoid use of power tools."  (Tr. 172, 238) As indicated above, the ALJ included in the hypothetical the following restrictions related to plaintiff's carpal tunnel syndrome: "She should not be exposed to vibration or use power tools. She can perform frequent, but not constant, fingering and handling.  She should not engage in

---

        category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

[2]Plaintiff resides in the lower peninsula of Michigan.  (Tr. 247)

forceful gripping, grasping, pinching, squeezing, or twisting." (Tr. 23, 270-71) Plaintiff argues that Dr. Fram's findings regarding plaintiff's ability to use her hands are more restrictive that the ALJ's findings and that if Dr. Fram's findings were given the proper weight, the ALJ would have been compelled to find plaintiff disabled.

The court finds plaintiff's argument to be wholly without merit. As plaintiff correctly notes in her brief, [i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997). Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, plaintiff's reliance on this rule is misplaced because the ALJ did not ignore or discount Dr. Fram's opinion regarding plaintiff's use of her hands. Rather, the restrictions the ALJ included in the hypothetical to accommodate plaintiff's bi-lateral carpal tunnel syndrome are entirely consistent with Dr. Fram's recommended restrictions. Notwithstanding plaintiff's assertions to the contrary, the court sees no meaningful difference between the ALJ's determination that plaintiff could not use her hands on a "constant" basis and Dr. Fram's statement that plaintiff should not make "repetitive" use of her hands. The two terms are similar in meaning, and the term selected by the ALJ was sufficient to convey to the VE the extent of plaintiff's impairment.

Further, the ALJ determined that plaintiff could push and pull 10 pounds frequently and 20 pounds occasionally. (Tr. 23) Plaintiff contends that the ALJ, in rendering this determination, did not give proper consideration to Dr. Fram's opinion that plaintiff should avoid "pushing and pulling." (Tr. 172, 238) As an initial matter, although it is not entirely clear given the manner in which the treatment note is written, it appears that Dr. Fram advised plaintiff to avoid *repetitive* pushing and pulling, not pushing and pulling altogether, as plaintiff seems to suggest. Interpreted as such, there is no conflict between the ALJ's findings and Dr. Fram's findings. To the extent Dr. Fram advised plaintiff to avoid pushing and pulling altogether, the ALJ acted reasonably in rejecting that portion of Dr. Fram's opinion. Dr. Fram herself repeatedly characterized plaintiff's carpal tunnel syndrome as "mild." (Tr. 172, 176, 179) Thus, Dr. Fram's own notes do not support her statement that plaintiff should avoid all pushing and pulling, if that is indeed what Dr. Fram advised. Further, a Michigan Disability Determination Services consulting physician reached a diametrically opposed conclusion, finding that plaintiff's ability to push and/or pull was "unlimited, other than as shown for lift and/or carry" (Tr. 167) The consultant also concluded that plaintiff could "frequently lift and/or carry (*including upward pulling*)" up to 25 pounds and occasionally "lift and/or carry (*including upward pulling*)" up to 50 pounds. (Tr. 161)(emphasis added) While the consultant's opinion may not be entitled to as much weight as that of a treating physician such as Dr. Fram, the consultant's opinion is nonetheless worthy of some consideration in determining whether the ALJ erred in rejecting Dr. Fram's opinion. In addition, plaintiff reported to her psychologist on April 12, 2001, that she had shampooed the carpeting in her home, an activity that undoubtedly

requires a significant amount of pushing and pulling. (Tr. 205) Plaintiff also indicated that she was capable of doing housework such as making beds, straightening the kitchen, mopping floors, doing laundry, cooking, vacuuming, dusting, and washing dishes. (Tr. 73-79) Again, these activities involve at least some pushing and pulling. Based on the foregoing, to the extent Dr. Fram opined that plaintiff should avoid all pushing and pulling due to her carpal tunnel syndrome, there is substantial evidence in the record to support the ALJ's determination that such a restriction was not warranted.

Plaintiff's final objection to the hypothetical relates to the ALJ's findings regarding plaintiff's mental RFC. In assessing plaintiff's mental RFC, the ALJ determined, among other things, that "[t]here is evidence of moderate impairment of the claimant's functioning in the area of concentration, persistence, or pace." (Tr. 21) In order to accommodate plaintiff's mental impairments, the ALJ included the following restrictions in the hypothetical: "The individual is limited to performing work that is simple and routine. The individual can perform work that involves no more than superficial contract with coworkers, supervisors or the general public." (Tr. 271) Plaintiff contends that the restriction to "simple and routine" work was insufficient to accommodate her moderately impaired functioning in the area of concentration, persistence, or pace, as found by the ALJ, and, therefore, that the hypothetical was inaccurate.

To the extent plaintiff argues that the ALJ was required to specifically state in the hypothetical that plaintiff was moderately impaired in the area of concentration, persistence, or pace, the argument is rejected. As the Sixth Circuit indicated in Smith v. Halter, 307 F.3d 377 (6th Cir. 2001), an ALJ is not required to expressly incorporate a deficiency in concentration,

persistence, or pace in a hypothetical as long as the hypothetical otherwise includes some accommodation for the deficiency. In Smith, the claimant contended that the hypothetical posed by the ALJ was defective because he did not inform the VE that the claimant "often" suffered deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. The court rejected the claimant's argument, stating the following:

> The ALJ's "finding" Smith relies on here – that Smith "often" has problems concentrating that preclude him from completing tasks on time – was a single box the ALJ checked in a 1-5 rating scale on a standard psychiatric assessment form. But the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment, as *Varley* requires. In particular, the ALJ relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible. The ALJ then translated Smith's condition into the only concrete restrictions available to him – examining psychiatrist Schweid's recommended restrictions against quotas, complexity, stress, etc. – and duly incorporated them into his hypothetical to the vocational expert.

Smith, 307 F.3d at 379. Clearly, there is no requirement that a deficiency in "concentration, persistence, or pace" be expressly stated in a hypothetical in those terms. Rather, the ALJ has discharged her obligation where the deficiency is expressed in terms of the claimant's functional capabilities. Again, to the extent plaintiff argues otherwise, the argument is rejected.

In support of her argument, plaintiff cites two out-of-circuit cases in which the courts found that the claimants' concentration deficits were not properly reflected in the hypothetical questions posed by the ALJs. In McGuire v. Apfel, 1999 WL 426035 (D.Oregon), the district court concluded that the ALJ's inclusion in the hypothetical of a vocational restriction to "simple" work did not adequately account for his finding that the claimant "often" had

deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. In Newton v. Chater, 92 F.3d 688 (8th Cir. 1996), the Eighth Circuit concluded that the vocational limitation included in the hypothetical restricting the claimant to "simple" tasks did not adequately account for the claimant's moderate deficiencies in concentration, persistence, or pace. Plaintiff claims that a restriction to "simple and routine" work, as used in this case, accommodates a deficiency in concentration, persistence, or pace rated as "often" no better than the "simple" task restrictions that were rejected in McGuire and Newton. The court finds plaintiff's argument to be unpersuasive. The issue with respect to review of a hypothetical is whether it accurately portrays the claimant in question. In some cases, a restriction to "simple" tasks or "simple and routine" tasks may be insufficient to accommodate a deficiency in concentration, persistence, or pace, and in some cases, such a restriction may be sufficient. Each case must be decided on its own facts. Thus, notwithstanding the fact that neither McGuire nor Newton is binding upon this court, the fact that a vocational restriction similar to that employed by the ALJ in this case was found in those cases to be insufficient does not compel a finding that the ALJ erred in this matter.[3]

---

[3]In support of her argument, plaintiff also relies upon Bankston v. Commissioner of Social Security, 127 F.Supp.2d 820 (E.D.Mich. 2000), in which the court determined that a finding that the claimant "often" suffered deficiencies in concentration, persistence, or pace was sufficient to establish that he was disabled. Plaintiff contends that a "moderate" impairment under the new Mental RFC form is equivalent to "often" suffering deficiencies in this area, as used in the old form, and, therefore, that a "moderate" impairment, under the reasoning of Bankston, is sufficient to support an award of disability benefits. Plaintiff in essence asserts that any claimant who is found to have a "moderate" impairment in this area should be deemed disabled. As discussed above, each case must be reviewed on its own fact. The court is unwilling to accept the blanket rule plaintiff appears to be advocating.

Plaintiff points to nothing substantive in the record indicating that additional restrictions were necessary to render the hypothetical accurate. In the entire 277-page record, the court found exactly one reference to the fact that plaintiff was experiencing concentration difficulties. On April 4, 2002, plaintiff reported to her treating psychologist, Dr. Janet Heasley, that she had "developed symptoms of...inability to concentrate." (Tr. 215) There is otherwise no reference in the record to any concentration deficits. Moreover, a mere one and one-half months later, plaintiff reported to Dr. Heasley that she was "able to concentrate better." (Tr. 214) Further, at the administrative hearing, plaintiff disclaimed any difficulties in the area of concentration, persistence, or pace, and stated that she was "doing 100 percent better" mentally as of six months prior to the hearing, and perhaps even before that.[4] (Tr. 263-64) In addition, Dr. H.C. Tien, a consulting psychiatrist, concluded that while plaintiff was moderately limited in her ability to "maintain concentration and attention for extended periods," she was nonetheless "capable of a wide range of unskilled tasks in a regular work environment." (Tr. 154-56) Thus, it appears that Dr. Tien was of the opinion that plaintiff's ability to perform work tasks was not significantly affected by her mental impairments. In sum, there is simply nothing in the record to suggest that restrictions beyond those found by the ALJ were required to adequately accommodate plaintiff's deficiencies in the area of concentration, persistence, or pace.

---

[4]Counsel asked plaintiff the following question: "Did you have any problems functioning, maintaining doing tasks or memory things or anything like that?" Plaintiff replied, in relevant part: "No, no. Just – it, it was one those – like a moment thing, you know. But as far as, you know, everyday living, I, I was able to be okay. (Tr. 264)

Based on the foregoing, the court finds that the hypothetical posed by the ALJ reasonably and accurately portrayed plaintiff's mental and physical limitations. Accordingly, the VE's testimony in response thereto constitutes substantial evidence to support the ALJ's determination that plaintiff is not disabled.

### V.  Conclusion

For the reasons stated herein, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, that the determination denying disability benefits be affirmed, and that plaintiff's complaint be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                          s/Virginia M. Morgan
                                          VIRGINIA M. MORGAN
Dated: April 29, 2005              UNITED STATES MAGISTRATE JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administration by electronic means or U.S. Mail on April 29, 2005.

                              s/Jennifer Hernandez
                              Case Manager to
                              Magistrate Judge Morgan